**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SANDRA A. DANIEL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. CIV-07-786-M |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Sandra A. Daniel, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that this Court reverse the Commissioner's decision and remand the case for further proceedings.

**I.     Agency Proceedings**

Plaintiff filed an application for SSI with a protective filing date of February 18, 2004, alleging an inability to work since July 1, 2001. *See* Administrative Record [Doc. #13] (AR) at 52-61. Plaintiff's application was denied initially and on reconsideration. AR 24, 25. Following a hearing, an Administrative Law Judge (ALJ) found that Plaintiff was not disabled. AR 14-21. The Appeals Council denied Plaintiff's request for review, AR 5-8, making the decision of the ALJ the final decision of the Commissioner.

**II.     The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. He first determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. AR 16. At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: degenerative disc disease of the thoracic and lumbar spine and a panic disorder with agoraphobia. AR 16. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 16-17. At step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk (with normal breaks) at least 2 hours during an 8-hour workday, and sit (with normal breaks) about 6 hours in an 8-hour workday. She can perform simple/repetitive tasks and can have only incidental contact with the public.

AR 17. The ALJ then determined that Plaintiff cannot return to her past relevant work as a nurse's assistant or laundry worker, jobs performed at the medium exertional level, beyond what Plaintiff can now perform. AR 19-20. At step five, the ALJ relied on vocational expert testimony and determined that Plaintiff could perform sedentary work such as fishing reel assembler and hand suture winder, jobs which exist in significant numbers both locally and in the national economy. AR 20.

**III.   Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.   Issues Considered on Appeal**

Plaintiff brings three claims of error in this action. Plaintiff's claims relate only to the physical impairments caused by her back pain. Plaintiff does not bring any claim of error related to her mental impairments. For that reason, review of the record is limited to Plaintiff's physical impairments.

Plaintiff first claims the Commissioner's decision should be reversed because the ALJ did not give proper weight to the opinion of her treating physician, Dr. Larry Willis. Plaintiff additionally argues the ALJ erred in failing to recontact Dr. Willis to clarify his medical opinion. Plaintiff next claims that, due to pain, she does not have the residual functional

capacity to perform substantial gainful activity. In her final claim of error, Plaintiff contends the ALJ erred in his credibility analysis by failing to consider all factors pertinent to this analysis and, therefore, that the credibility determination is not supported by substantial evidence.

**V.    Analysis**

    **1.    The Treating Physician Opinion of Dr. Willis**

Plaintiff first claims the ALJ erred in failing to give controlling weight to the opinion of Dr. Willis. The Commissioner does not dispute that Dr. Willis qualifies as a treating physician. The record shows that Dr. Willis, a rheumatologist practicing at the McBride Clinic in Oklahoma City, Oklahoma, treated Plaintiff from approximately November 27, 2001 through July 27, 2005. AR 194-214; 273-281. Plaintiff was continuing to receive treatment from Dr. Willis at the time of the administrative hearing in August 2005. AR 318.

On initial examination of Plaintiff's spine, Dr. Willis noted tenderness at touch points and decreased range of motion in the cervical and lumbar sacral spine. AR 212. In August 2003, Dr. Willis noted Plaintiff's recent complaints of increased rib pain and ordered x-rays of her mid-back and right "10-11 ribs." AR 200. At that same time Donald Flinn, a physician's assistant at McBride Clinic, conducted a physical exam and noted that Plaintiff was experiencing a lot of low back pain and mid back pain. AR 201. Flinn reviewed the x-rays as ordered by Dr. Willis and noted with respect to Plaintiff's thoracic and lumbar spine: "decreased kyphos with straightening of the thoracic spine." With respect to Plaintiff's rib pain, Flinn stated: "[e]tiology is undetermined, but I think mostly it is degenerative disc

disease with positive trigger point." *Id*. Plaintiff's treatment plan included refilling her pain medications and giving her an injection of Kenalog and Lidocaine at her trigger point. *Id*. Plaintiff was scheduled for "followup routinely in the office with Dr. Willis." *Id*.

In February 2004, Dr. Willis diagnosed Plaintiff as having osteoarthritis and degenerative disc disease and continued Plaintiff on her pain medications. AR 198.

In June 2004, additional x-rays of Plaintiff's spine were taken. Plaintiff had mild scoliosis in the thoracic spine and degenerative disc disease in the lumbosacral spine. AR 229, 230, 233.

In May 2005, Dr. Willis wrote a "To Whom It May Concern" letter and opined that Plaintiff was unable to be gainfully employed due to degenerative disc disease. AR 275.[1]

In July 2005, Dr. Willis completed a Medical Source Statement. AR 273-274. He opined that Plaintiff could frequently lift and/or carry less than ten pounds, occasionally lift and/or carry less than ten pounds, stand and/or walk for a total of 2 hours in an 8-hour workday and continuously for 10-15 minutes, and sit for a total of 3 hours in an 8-hour workday and continuously for 15-20 minutes. AR 273. Dr. Willis further opined that Plaintiff would be required to lie down during the normal workday to manage pain or other symptoms.

---

[1]One month prior to Dr. Willis writing this letter, Plaintiff had contacted Dr. Willis's office advising that she was in the process of applying for disability benefits "and would like for Dr. Willis to write a letter for her to send to the student loan program to get her student loans forgiven stating that she is 100% disabled due to her back and panic attacks." AR 279. Dr. Willis responded to this request with a note to his staff that indicates he was not willing to state Plaintiff was disabled but that he could write a letter stating that she has degenerative disc disease. It appears that he adds "and is truthful with me about pain." *Id*. Because the written comments from Dr. Willis are not entirely legible, it is difficult to draw any conclusions therefrom. The ALJ did not reference these records when rendering his decision.

AR 274. Dr. Willis conducted a physical examination of Plaintiff at this same time and noted abnormalities with Plaintiff's musculoskeletal system. AR 277.

    The ALJ summarized Dr. Willis's treatment records as follows:

> The claimant was treated by Larry Willis, M.D., of the McBride Rheumatology Department from November 27, 2001, to July 27, 2005. Dr. Willis stated that she had degenerative disc disease and treated her with medications and one trigger point injection. His treatment notes were very brief with no indication of a completed examination or objective signs or tests. There was no x-ray information in the file from Dr. Willis (Exhibit 9F and 16F).

AR 18. The ALJ then made the following finding regarding Dr. Willis's opinion contained in the Medical Source Statement:

> The undersigned finds that Dr. Willis's assessment is deficient, without supportive medical documentation. His only written comments were that the claimant was functionally limited, but he did not describe a medically determinable impairment that could reasonably cause such limitations. He provided no clinical signs in support of his conclusions. He did not refer to reports of individual providers, hospitals, or clinics, and he did not indicate on what basis, if any, his treatment of the claimant would support his conclusions. His own treatment records do not support his pessimistic functional assessment. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.

AR 19.

    The treating physician rule generally requires the Commissioner to give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. § 416.927(d)(2). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To make this determination, the ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id*. (quotations omitted); *see also* § 416.927(d)(2).

The ALJ found that Dr. Willis's opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques. In summarizing Dr. Willis's medical records, the ALJ specifically stated: "There was no x-ray information in the file from Dr. Willis." AR 18. Yet, contrary to this statement, Dr. Willis's physician's assistant, Donald Flinn, did review x-rays taken of Plaintiff's back as ordered by Dr. Willis. AR 201. The findings as summarized by Flinn are consistent with x-rays taken approximately one year later in June 2004. Those x-rays showed mild scoliosis of the thoracic spine and degenerative disc disease of the lumbosacral spine. AR 229-230, 233. In addition, although his notes are somewhat cryptic, Dr. Willis conducted physical examinations of Plaintiff on several occasions. AR 194-195, 198-199, 203, 204-205, 211-212, 213-214, 277, 281. Therefore, the ALJ's reasons for refusing to give controlling weight to Dr. Willis's opinion are not supported by substantial evidence.

Because the ALJ refused to give controlling weight to Dr. Willis's opinion on the basis of a lack of medically acceptable clinical and laboratory diagnostic techniques, he did not examine whether Dr. Willis's opinion was consistent with other substantial evidence in the record. The Court notes, however, the long treatment history Plaintiff received regarding her

chronic back pain. Dr Robberson, also a treating physician, saw Plaintiff from 1995 to 2001. AR 129-156. During this time period, Dr. Robberson diagnosed Plaintiff with osteoarthritis and chronic low back pain. AR 131, 134, 149. In November 2001, Dr. Robberson stated: "[Plaintiff] has chronic back pain syndrome, she is not working these days and this is good, work would be expected to increase her trouble with the back pain." AR 129. Shortly thereafter, Dr. Tatom advised Plaintiff not to return to work as a nurse's aid and diagnosed her with chronic back pain syndrome. AR 163. All three doctors, Robberson, Tatom and Willis, regularly prescribed Plaintiff pain medication for her chronic low back pain.

In addition, the consultative examiner, Jennifer Eischen, D.O., diagnosed Plaintiff with "[c]hronic musculoskeletal back pain with questionable radicular symptoms[.]" AR 190. Though Dr. Eischen did not find Plaintiff limited to the same degree as Dr. Willis, her diagnosis of Plaintiff is not wholly inconsistent with that of Dr. Willis.

The ALJ's decision to give less than controlling weight to Dr. Willis's opinion is likewise not supported by substantial evidence. Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ 416.927.]" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4). Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the

opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id*. at 1301 (quotation omitted).

"Here, contrary to the requirements of SSR 96-2p, the ALJ completely rejected [Dr. Willis's] opinion once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set forth in [§ 416.927]." *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Although Dr. Willis's treatment notes are not extensive, he did treat Plaintiff for nearly four years and that treatment was rendered on a routine and consistent basis. Dr. Willis's diagnosis of degenerative disc disease is supported by the record, including x-rays taken of Plaintiff's back. In addition to the degenerative disc disease, Dr. Willis diagnosed Plaintiff as suffering from osteoarthritis, a condition for which Dr. Willis is a specialist. Finally, Dr Willis's opinion is not inconsistent with the medical evidence as a whole. Dr. Willis's diagnosis of degenerative disc disease and osteoarthritis is consistent with the diagnosis of Dr. Robberson, also a treating physician.

Rather than addressing these factors, the ALJ erroneously stated that Dr. Willis did not describe a "medically determinable impairment that could reasonably cause such limitations." AR 19. This statement is contradicted by the ALJ's own findings at step two that Plaintiff's degenerative disc disease – the condition for which Dr. Willis treated Plaintiff – is a severe impairment. Thus, contrary to the ALJ's finding, Dr. Willis's treatment records do describe medically determinable impairments that could reasonably cause the described limitations.

*Compare Langley*, 373 F.3d at 1121 (ALJ's reasons for rejecting treating physician opinion not supported by the record where, contrary to ALJ's findings that records did not describe medically determinable impairments that could reasonably cause the limitations described in the medical source statement, all treatment records indicated the claimant had severe degenerative joint disease and suffered from, among other things, osteoarthritis and migraine headaches).

In sum, the ALJ's failure to follow the treating physician rule requires a remand. In making this recommendation, the court "do[es] not mean to suggest that there are not conflicts in the medical evidence," *see Langley*, 373 F.3d at 1121, as the record does include the report of the consulting physician who found Plaintiff's limitations less severe than those set forth in Dr. Willis's Medical Source Statement.[2] However, the ALJ's analysis of the weight given to Dr. Willis's opinion is deficient, and on remand the ALJ must support his findings regarding the weight given to Dr. Willis's opinion with substantial evidence. If the ALJ chooses to give less than controlling weight to Dr. Willis's opinion, the ALJ must address the factors set forth in SSR 96-2p relevant to that analysis.

Plaintiff further claims the ALJ should have recontacted Dr. Willis if the evidence from Dr. Willis was insufficient for the ALJ to make an accurate determination. Because a remand is required based on the ALJ's failure to comply with the treating physician rule, the Court need not decide whether the ALJ had a duty to recontact the treating physician. If, however,

---

[2]Also, the treatment records of Dr. Robberson contain information indicating that at one point in time Plaintiff may have been giving away her pain medication. AR 143.

on remand the ALJ finds the evidence from Dr. Willis to be "inadequate" to determine whether Plaintiff is disabled, the regulations require that the ALJ recontact the treating physician. *See* 20 C.F.R. § 416.912(e); *see also White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). In this regard, the Court notes the consultative examiner seemed interested in imaging studies records of Plaintiff's back, but did not find any such records available at the time of the examination. AR 190. And, the ALJ repeatedly referenced a lack of x-rays as a basis for rejecting the opinions of Plaintiff's treating physicians, though, as noted above, the ALJ erroneously failed to consider x-rays ordered by Dr. Willis. Thus, on remand, the ALJ may find it necessary to further develop the record with x-rays or other medically acceptable clinical and laboratory diagnostic techniques.

### 2.     The ALJ's Residual Functional Capacity Determination

As her second claim of error, Plaintiff contends the ALJ erred in his residual functional capacity determination. In support of this claim of error, Plaintiff mentions the Medical Source Statement of Dr. Willis. In addition, Plaintiff claims her pain prevents her from performing substantial gainful activity. Plaintiff offers no further analysis tied to the record in support of this claim of error.

As set forth above, the ALJ erred in evaluating Dr. Willis's opinion, requiring a remand. The ALJ's analysis of Dr. Willis's opinion on remand may affect the ALJ's residual functional capacity determination and, therefore, the Court need not further address this issue. Plaintiff challenges the ALJ's credibility analysis in her third claim of error. As discussed in relation to that claim of error, the ALJ's credibility analysis is not supported by substantial

evidence further requiring a remand. Again, the ALJ's credibility determination may affect the residual functional capacity determination and, therefore, further analysis of this claim of error is not warranted.

### 3.     The ALJ's Credibility Analysis

In her third and final claim of error, Plaintiff contends the ALJ did not properly analyze her subjective complaints of pain when making his credibility determination. Plaintiff testified the pain is caused by her degenerative disc disease. AR 322. She testified that due to pain, she must recline off and on constantly throughout the day, sometimes up to ten time per day. She remains in a reclined position for 10-15 minutes each time. AR 310-311. At night she has trouble sleeping and normally sleeps uninterrupted for no more than two hours. AR 311. Plaintiff testified that pain in her lower back is constant and will move into her legs, usually the right leg. AR 313. She suffers from leg pain approximately three times per month. *Id*. The leg pain lasts from 10 minutes to an hour. AR 313-314. Plaintiff testified she suffers from pain in her mid back about two and one half weeks out of every month. She has constant pain in her upper back. AR 315. Plaintiff experiences numbness in her arms and she also has muscle spasms in her back several times a day. AR 315-316.

With respect to treatment for pain, Plaintiff takes pain medications and sees Dr. Willis routinely every six months. AR 318. Her medications include Loritab, Somas, Zantac and Valium. AR 308. She testified the medications "help some" but "nothing will take it, the pain away, nothing will do that. I mean, you'd just have to be knocked out." AR 309.

Plaintiff testified that she can stand for 10 to 15 minutes at a time. She can lift approximately 10 pounds. AR 318-319.

As to daily activities, Plaintiff testified she does not cook but prepares only simple meals for herself. AR 307. Her husband and daughter help with the cooking. AR 307-308. She cleans around the house, but it takes her most of the day because she has to sit down often to rest. AR 307. She mostly watches television or reads during the day. AR 308.

In discounting Plaintiff's testimony regarding her subjective complaints of pain, the ALJ found that: (1) the medical evidence did not support the degree of limitations Plaintiff testified about concerning her activities of daily living; (2) her treatment plan had been conservative and controlled by medications; and (3) Plaintiff's sporadic work history "raises a question as to whether her continuing unemployment is actually due to medical impairments." AR 19.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

The ALJ's credibility analysis is not supported by substantial evidence. As set forth above, Dr. Willis's opinion was entirely consistent with Plaintiff's subjective complaints of pain and her limited daily activities. The ALJ did not properly analyze Dr. Willis's opinion

and failure to do so adversely affects his credibility determination as well. While the ALJ deemed Plaintiff's treatment plan for back pain conservative, there is no indication from the record that Plaintiff was eligible for surgery or that other treatment options had been considered for her.[3] Finally, the ALJ's questioning of Plaintiff's motivation to work based on her sporadic work history ignores evidence in the record that indicates Plaintiff had previously received disability due to cancer, Plaintiff's treating physicians, Dr. Robberson and Dr. Tatom, each found it advisable for Plaintiff not to work as a nurse's aid; and finally, that Plaintiff was working towards a college degree to enable her to find other work. AR 129, 131, 163, 299. The ALJ's credibility findings, therefore, are not closely and affirmatively linked to substantial evidence in the record. *See Kepler*, 68 F.3d at 391 (holding that ALJ's analysis of credibility of subjective complaints is inadequate if ALJ merely states conclusion that pain is not disabling without making express findings with reference to relevant evidence). The case must be remanded for further proceedings to assess Plaintiff's credibility.

In sum, a remand is required so that the ALJ can conduct a proper analysis of the treating physician opinion of Dr. Willis, recontact Dr. Willis if necessary for proper development of the record, and closely and affirmatively link his credibility findings to substantial evidence in the record.

---

[3]In August 1996, Dr. Robberson wrote a "To Whom It May Concern" letter stating that he had been treating Plaintiff for chronic low back pain for at least two years and that he was "attempting to keep from sending her for surgery." AR 151. This is the only reference to surgery in the medical record.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by June __30th__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __10th__ day of June, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE